IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:22-cv-1269-WWB-RMN

POWIS PARKER, INC.,
A/A/O FORMATIC GMBH

Plaintiff,

v.

TRUIST BANK,

Defendant.
_____________________________________/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

**COMES NOW** Defendant Truist Bank ("Truist"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves for entry of summary judgment against Plaintiff POWIS PARKER, INC. A/A/O FORMATIC GMBH ("Plaintiff"). Truist also submits its incorporated memorandum of law, and states as follows:

## INTRODUCTION

Plaintiff seeks to hold Truist liable for a purportedly fraudulent wire transfer sent to an account at Truist. The only remaining claim against Truist is Plaintiff's claim under Florida's codification of Article 4A of the Uniform Commercial Code, specifically the portion found at Section 670.207, Florida Statutes ("Section 670.207"). Section 670.207 dictates when a bank can be held liable for accepting a wire transfer. Plaintiff claims Truist is liable in this case because Truist was supplied with both an account number and a beneficiary name, and Truist processed the wire transfer using just the account number.



51411522 v1

Plaintiff argues that had Truist used the beneficiary name to identify the account to receive the wire transfer funds, Truist would have noticed that the account at Truist which was properly identified by the account number did not correspond to the beneficiary name also supplied. However, Plaintiff's claim fails because the material, undisputed facts establish that Truist had **no actual knowledge** of a mismatch between the account number and intended beneficiary's name on the wire transfer instructions and instead properly relied on an automated system that relied exclusively on the account number.

By its own terms, Section 670.207 permits Truist to rely upon the account number alone when accepting a wire transfer and does not obligate banks to check the beneficiary name. Florida law is also clear that a bank must possess **actual knowledge** of any mismatch between the beneficiary and account number for the bank's reliance on the account number alone to be insufficient. Thus, where, as here, the bank relies solely on the account number when processing the wire transfer, it generally **lacks the required actual knowledge** of a beneficiary mismatch so as to trigger liability under Section 670.207.

Plaintiff's argument that Truist could have checked information that would have shown the beneficiary mismatch during the wire transfer is not sufficient to establish a genuine issue of material fact in this case. As set forth in greater detail below, this case is indistinguishable from multiple Eleventh Circuit opinions that provide a bank is not liable under Section 670.207 when it utilizes an automated system that relies only on the account number to process a wire transfer. Therefore, summary judgment should be entered in Truist's favor since Truist has no liability to Plaintiff under the plain text of Section 670.207.

**PROCEDURAL HISTORY**

1. Plaintiff commenced this action by filing a complaint against Truist in the Circuit Court of Orange County, Florida, Case Number 2022-CA-005748-0 on or about June 23, 2022.

2. Truist timely removed the action to this Court. [DE 1].

3. Truist then moved to dismiss the Complaint. [DE 9].

4. Rather than oppose Truist's motion to dismiss, the Plaintiff submitted its First Amended Complaint on August 9, 2022, abandoning its original theories of recovery and interposing new theories. [DE 10].

5. Plaintiff then agreed to withdraw certain of its claims against Truist, and filed its Second Amended Complaint. [DE 15].

6. The Second Amended Complaint contains two counts: Count I (Violation of Fla. Stat. § 670.207) and Count II (Breach of Contract).

7. On August 23, 2022, Truist filed a motion to dismiss the Second Amended Complaint for failure to state a claim. [DE 18].

8. On February 2, 2023, the Court granted the motion to dismiss in part. [DE 35]. In its Order, the Court dismissed Plaintiff's claim for breach of contract with prejudice, on the grounds that the claim sought to create a right, duty, and liability inconsistent with those set forth in Florida law. [DE 35, at 7]. The Court denied the motion to dismiss as to Plaintiff's claim under section 670.207, finding sufficient allegations of actual knowledge in the Second Amended Complaint to survive the pleading stage, but cautioning that "Plaintiff must provide evidence of actual knowledge to survive the summary judgment stage." [DE 35, at 4–5].

9. Because the undisputed, material facts establish that Truist lacked actual knowledge that the account number differed from the name on the account, Truist is entitled to summary judgment on the remaining section 670.207 claim.

10. In support of this motion, Truist attaches the Affidavit of Tina M. Williams ("Williams Aff.") as **Exhibit 1** and the expert opinion of Geoffrey Longstaff ("Opinion of Longstaff) as **Exhibit 2**.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On or about February 4, 2022, Truist accepted a wire transfer in the amount of $245,000.00 to be deposited into a Truist account identified by the account number 1000279820137 (the "Wire Transfer"). *See* Williams Aff., ¶ 4.

2. The Wire Transfer was initiated by the German corporation Formatic GmbH ("Formatic"). DE 15, ¶ 9.

3. In the instructions provided by Formatic contemporaneously with the Wire Transfer, Formatic directed that the $245,000.00 be deposited into an account identified by the number 1000279820137 and identified by the account name "Powis Parker Incorporated." DE 15, ¶ 10.

4. At the time of the Wire Transfer, Truist had a valid account with the number 1000279820137, which was held in the name of an entity other than "Powis Parker Incorporated". DE 15, ¶ 11-12; Williams Aff., ¶ 4-8.

5. Because Formatic had identified a Truist account number in the instructions for the Wire Transfer, the Wire Transfer was processed electronically through a fully automated system based on this account number. Williams Aff., ¶ 4-8.

6. Specifically, the Wire Transfer was received at Truist via the Fedwire system. Since a valid Truist account number was identified in the instructions for the Wire Transfer, the Wire Transfer was processed electronically through a fully automated system called the Money Transfer System ("MTS"). Williams Aff., ¶ 5.

7. MTS creates a computerized record that documents the incoming wire transfer transaction, including the various automated processing steps. Williams Aff., ¶ 6, Ex. A.

8. MTS interfaces electronically with Truist's system to look up the account number provided in the Wire Transfer instructions and see if it matches a valid Truist account number. Williams Aff., ¶ 7.

9. For the Wire Transfer, the automated system matched the account number provided in the instructions for the transfer with the Truist account that held the same number. Thus, because the systematic lookup of the account number was successful, the transfer was processed electronically. Williams Aff., ¶ 8.

10. The automated process outlined above does not conduct a check on the beneficiary name identified in the incoming wire transfer instructions or attempt to match the beneficiary name with the name of the account holder. The transfers are processed based solely on account number. Williams Aff., ¶ 9.

11. The only stoppage of the payment that occurred at any time during the processing of the Wire Transfer was for review for compliance with Office of Foreign Asset Control ("OFAC") for sanctions imposed on individuals by the United States Federal Government, which involves a scan using the application Fircosoft. Williams Aff., ¶ 10.

12. During the OFAC screening process for the Wire Transfer, the Wire Transfer was halted due to a "NAME MISMATCH" between two fields identified by Fircosoft as the OBI field and the 5100 field. *See* Williams Aff., ¶ 11.

13. The OBI field contains payment information from the originator bank to the beneficiary bank, which in this case stated "PREPAYMENT 03/22." Williams Aff., ¶ 12.

14. The 5100 field contains information as to the originator's bank, which was identified as "B/GENODEM1IBB VOLKSBANK MUENSTERLAND NORD EG MATTHIASSTR. 30 RHEINE, DE 48431." Williams Aff., ¶ 13.

15. Neither the OBI field nor the 5100 field contain the beneficiary name and at no point during the OFAC review for the Wire Transfer was the intended beneficiary name or recipient accountholder name reviewed by anyone at Truist. Williams Aff., ¶ 14.

16. After a review of the OBI field and the 5100 field, the Wire Transfer was released by Truist, because no OFAC violation was found in the OBI and 5100 fields. Williams Aff., ¶ 15.

17. Thus, the notation of "NAME MISMATCH" in Exhibit A does not refer to a mismatch between the intended beneficiary name and the recipient accountholder name, as this was not something that was reviewed at any time during the processing of the Wire Transfer. Williams Aff., ¶ 16.

18. On March 10, 2022, Truist received a reversal request from Bank of American for the Wire Transfer that was made on February 7, 2022 to the account number 1000279820137. This request could not be fulfilled because the funds had already been removed from the account. Williams Aff., ¶ 17.

19. At no time prior to March 10, 2022, was anyone at Truist aware of a beneficiary name mismatch regarding the Wire Transfer. Williams Aff., ¶ 18.

## STANDARD ON SUMMARY JUDGMENT

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Which facts are material depends on the substantive law applicable to the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine dispute of material fact exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When the party seeking summary judgment identifies the absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986) (internal citations omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *See id.* at 322, 324–25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by the estabished facts. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). A failure to show sufficient evidence in support of any essential element to a party's claim is fatal to that claim, and the court should grant the moving party's motion for summary judgment. *See Celotex*, 477 U.S. at 322–23.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A. Truist Was Permitted to Rely on an Account Number Alone When Processing Wire Transfers.

Plaintiff incorrectly argues that Truist was obligated under Section 670.207(2)(b) to reject the Wire Transfer because the beneficiary name in the instructions refers to a company other than the accountholder for the account identified by number. *See* Am. Compl., ¶ 16. However, Section 670.207(2) does not impose strict liability in cases of a beneficiary name mismatch during a wire transfer, and instead states:

> (2) **If** a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and **the name and number identify different persons, the following rules apply**:
>
> (a) Except as otherwise provided in subsection (3), **if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. **The beneficiary's bank need not determine whether the name and number refer to the same person**.
>
> (b) If the beneficiary's bank pays the person identified by name or **knows that the name and number identify different persons**, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

(emphasis added). Thus, to prevail in this action, Plaintiff must prove that someone at Truist knew about the beneficiary mismatch but elected to accept the Wire Transfer anyway.

As will be shown in the subsequent sections of this motion, Truist did not and was not required to check whether or not the name and account number referenced different persons; therefore Truist did not "know" of the mismatch between the name and account

number, and is not liable under Section 670.207. The fact that Truist did not check whether the name and account number reference different persons is neither unusual, nor outside the expectations set by the Florida Legislature. Section 670.207 makes clear that banks have no obligation to verify whether or not the account number matches the beneficiary name when processing a wire transfer. *See* Fla. Stat. § 670.207(2)(a); Fla. Stat. § 670.207(2)(a) cmt. 2.

Indeed, the Florida Legislature has explained, in great detail, the reason banks are not expected to check for a match of the beneficiary name with each wire transfer. Specifically, the official comment[1] to the statute reads, in relevant part:

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. The process is comparable to that used in automated payment of checks. **The standard format, however, may also allow the inclusion of the name of the beneficiary** and other information which can be useful to the beneficiary's bank and the beneficiary but **which plays no part in the process of payment**. If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, **but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost.** Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the

---

[1] Although not binding law, official comments "do occupy an unusual position as aids to statutory interpretation and should be regarded as an indispensable part of the UCC framework." *In re Graupner*, 537 F.3d 1295, 1301 n.4 (11th Cir. 2008).

> possibility of clerical error is reduced. **Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons**. "Know" is defined in Section 1-201(25) to mean actual knowledge, and Section 1-201(27) states rules for determining when an organization has knowledge of information received by the organization. **The time of payment is the pertinent time at which knowledge or lack of knowledge must be determined.**
>
> Although the clear trend is for beneficiary's banks to process payment orders by automated means**, Section 4A-207 is not limited to cases in which processing is done by automated means. A bank that processes by semi-automated means or even manually may rely on number as stated in Section 4A-207.**

Fla Stat. § 670.207, cmt 2 (emphasis added). Thus, Truist was explicitly authorized by Florida law to rely on the account number alone in processing the Wire Transfer, and Plaintiff's argument that Truist is liable solely because there was beneficiary name mismatch has no support under Article 4A of the UCC or otherwise.

### B. Truist Had No Actual Knowledge of the Beneficiary Name Mismatch During the Wire Transfer.

Truist is not liable under Section 670.207 because it did not "know" of any beneficiary name mismatch during the Wire Transfer. For example, in the official comment to Section 670.207, the Florida Legislature states:

> Normally, subsection (b)(1) will apply to the hypothetical case discussed in Comment 2. Beneficiary's Bank will pay on the basis of the number without knowledge of the conflict. In that case subsection (c) places the loss on either [Formatic] or [Formatic]'s Bank. It is not unfair to assign the loss to [Formatic] because it is the person who dealt with the impostor and it supplied the wrong account number.

Fla. Stat. § 670.207, cmt 3. Florida's Uniform Commercial Code states that "[a] person 'knows' or has 'knowledge' of a fact when the person has **<u>actual knowledge</u>** of it." Fla.

Stat. § 671.201(26)(c) (emphasis added). As this Court has already held, it is not sufficient to argue that a bank is liable under Section 670.207 because it supposedly "could have" or "should have" known of the beneficiary mismatch based on the information available to Truist. *See Powis Parker, Inc. v. Truist Bank,* 6:22-CV-1269-WWB-DAB, 2023 WL 1469400, at *2 (M.D. Fla. Feb. 2, 2023). Nor would it be sufficient to argue that Truist became aware of the beneficiary mismatch after the payment was completed. *See* Fla Stat. § 670.207, cmt 2 ("The time of payment is the pertinent time at which knowledge or lack of knowledge must be determined."); *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000). The question of actual knowledge and due diligence is one that is often ripe for summary judgment because the material facts regarding how the wire transfer was handled are generally not in dispute. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 Fed. Appx. 741 (11th Cir. 2019) (affirming entry of summary judgment on the issue). In this case, there is no genuine issue of material fact that no one at Truist became aware of the beneficiary name mismatch at the time of the Wire Transfer. *See* Williams Aff., ¶ 18. Therefore, Truist is entitled to summary judgment as a matter of law.

**1. The wire transfer was an automated transaction, which did not impart actual knowledge of the beneficiary name mismatch.**

Truist did not "know" of the beneficiary mismatch for two reasons: (1) the automated nature of the Wire Transfer completed the transaction without any action or input by an individual at Truist regarding the beneficiary name, and (2) Truist relied on the account number and not the beneficiary name to complete the transaction. In the Amended Complaint, Plaintiff incorrectly argues that Truist had "knowledge" of the mismatch because the bank's system holds the Account in a name other than Plaintiff.

*See* DE 15 (Am. Compl.), ¶ 16. However, that does not create a genuine issue of material fact because it does not establish that an individual at Truist conducted the Wire Transfer (it was automated), or that an individual at Truist became aware of the beneficiary name mismatch during the Wire Transfer.

Florida law is clear that a bank is not liable for a wire transfer if an automated system processes the wire transfer by account number, and the automated system does not identify a beneficiary name mismatch. According to Florida's codification of the UCC, an organization is deemed to have knowledge of a fact relating to "a particular transaction from the time when it is brought to the attention of the individual conducting that transaction," or, alternatively, "from the time when it would have been brought to the individual's attention if the organization had exercised due diligence." Fla. Stat. § 671.201(27) (emphasis added). "An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines." *Id.*

Applying the UCC's framework for when the bank has "knowledge" of a beneficiary name mismatch shows that it cannot arise during an automated transaction processed solely by account number. First, during an automated transaction, there is no "individual" alerted to the beneficiary name mismatch, and the bank therefore lacks the actual knowledge necessary for liability under Section 670.207. *See* Fla. Stat. § 671.201(27); *Julio J. Valdes, M.D., P.A. v. Customers Bank, Inc.*, 830 Fed. Appx. 598, 601 (11th Cir. 2020) ("Nor could the bank have known of the discrepancy from the face of the payment orders because they were processed using an automated system that read only the number of the designated bank account.") Second, the due diligence requirement of

section 671.201(27) only applies to the "individual conducting the transaction" and thus does not apply to an automated transaction. *See* Fla. Stat. § 671.201(27); *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226, 1233 (S.D. Fla. 2018) *aff'd* 795 Fed. Appx. 741 (11th Cir. 2019) (holding, "the due diligence requirement from section 671.201(27) applies only to the 'individual conducting the transaction.' Here, no individual conducted the transaction; it was automated."). Since the "due diligence" standard only applies to an individual conducting the transaction (if there is such an individual) it also "does not impose a constructive knowledge standard on organizations generally." *Madison Title Agency, LLC v. Bank of Am., N.A.*, 1:20-CV-03674-VMC, 2023 WL 3727281, at *3 fn 6 (N.D. Ga. Apr. 20, 2023). Thus, when an automated system is used that processes the transaction solely by account number, and no individual conducts the transaction, there is no liability under Section 670.207 because no individual at the bank acquires the knowledge necessary for liability.

Furthermore, even if the "reasonable routines" requirement and "due diligence" standards applied during automated transactions, reliance on the account number alone to route the payment is reasonable as a matter of law. *See Julio J. Valdes, M.D., P.A.,* 830 Fed. Appx. at 601 ("Customer's Bank maintained a reasonable routine, in which its automated processing system relied on the account number as the proper identification of the beneficiary of the order"). For example, the California Supreme Court interpreted an identical UCC provision and held that the bank did not fail to exercise due diligence when it relied on an automated system to process wire transfers by account number, and did not check the beneficiary name, holding:

> [M]achines will be instructed to read the numbers and to credit the amount represented by the numbers in the numbered account in complete obliviousness to the name on the account. By producing a relatively certain law and stating clearly who bears any loss, the drafters have done all that could be asked of them.

*Id*. (emphasis added). Thus, any argument by Plaintiff that Truist was obligated to check for a beneficiary name check to have a reasonable routine and exercise due diligence is incorrect as a matter of law. *See Peter E. Shapiro,* 795 Fed. Appx. at 748 (analyzing identical bank practices and holding, "we easily conclude that Wells Fargo maintained and complied with reasonable routines"); *Julio J. Valdes, M.D., P.A.,* 830 Fed. Appx. at 601; Fla. Stat. § 670.207(2)(a) cmt. 2 ("Beneficiary's Bank has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order.")

The facts of this case are on point with those of *Julio J. Valdes, M.D., P.A. v. Customers Bank, Inc.*, where the Eleventh Circuit affirmed a trial court's ruling in favor of a bank in a similar beneficiary name mismatch case, stating:

> Valdes identified no occasion when a bank employee was aware of or was told that Urling's account number did not refer to Valdes. *See* Fla. Stat. § 671.201(27). Nor could the bank have known of the discrepancy from the face of the payment orders because they were processed using an automated system that read only the number of the designated bank account. *See id*. § 670.207 cmt. n.2. Valdes also alleged no facts to establish that Customer's Bank failed to exercise due diligence. *See id*. § 671.201(27). Customer's Bank "maintaine[d] [a] reasonable routine[ ]," *id*., in which its automated processing system "rel[ied] on the [account] number as the proper identification of the beneficiary of the order," *id*. § 670.207(2)(a).

830 Fed. Appx. at 601. Similarly, in this case Plaintiff can identify no occasion when a bank employee was aware of or was told that the account number in the Wire Transfer

did not refer to Plaintiff. *Id.* at ¶ 18. Nor could anyone at Truist have known about the beneficiary name mismatch because the automated process used for the Wire Transfer read only the account number. Williams Aff., ¶¶ 7-9. No one at Truist failed to exercise due diligence. The system employed by Truist which uses the account number as the proper identification of the beneficiary is a reasonable routine based upon the plain text of Florida's codification of the UCC. *See* Fla. Stat. § 670.207(2).

In the Second Amended Complaint, Plaintiff incorrectly argues "[h]aving opened account number [XXXXXXXXXXXX]0137, Defendant Bank had knowledge, as defined in Florida Statute § 671.209(6), of the information contained in its own records that account number [XXXXXXXXXXXX]0137 referred to a person or entity other than Powis Parker Incorporated." DE 15 (Am. Compl.), ¶ 16. However, in *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.,* United States District Judge Ursula Ungaro rejected this exact argument, and the Eleventh Circuit affirmed her entry of summary judgment for the bank. *See* 795 Fed. Appx. 741 (affirming summary judgment for bank). Specifically, Judge Ungaro stated that:

> Plaintiff argues that Wells Fargo had knowledge because it had opened the receiving account in Chris Achebe's name and it had processed a fraudulent wire to his account previously. But these facts do not create actual knowledge of a mismatch in the wire transfer at issue. They do not even create constructive knowledge of a mismatch.
>
> Additionally, the mere presence of information stored in an automated computer program does not create knowledge. . . Thus, information stored within a bank's computer system does not create actual knowledge or a duty to investigate.

352 F. Supp. 3d at 1233. Since Plaintiff's argument cannot be distinguished from the argument rejected by Judge Ungara and the Eleventh Circuit in *Peter E. Shapiro*, the Court should grant summary judgment in favor of Truist.

Plaintiff may incorrectly argue that a beneficiary name check is something a reasonable bank *could* do, or that in Plaintiff's view, is something a reasonable bank *should* do. According to the Eleventh Circuit, however, neither of those considerations is material under Florida's Uniform Commercial Code.

> Even if Wells Fargo intentionally programmed the automated portions of its MTS system to ignore potential name mismatches (which we assume to be true for purposes of reviewing the district court's ruling on Wells Fargo's motion for summary judgment), it may rely on the number as the proper identification of the beneficiary of the order unless and until an individual person conducting the transaction has actual knowledge of a name mismatch or would have had such knowledge had the organization exercised due diligence.

*Id.* at 747 fn 5. Furthermore, the Florida Legislature has explained at length its reasoning for <u>not</u> requiring a beneficiary name check or human intervention when there is a beneficiary name mismatch. *See* Fla. Stat. § 670.207, cmt. 2. The implementation of a requirement to check for beneficiary name matches, which can be plagued by more nuanced errors in spelling, abbreviation, punctuation, or the use of multiple names by the same business, would run counter to other important policy considerations that undergird the framework established by the Florida Legislature. *Id.*; *see also Peter E. Shapiro, P.A.*, 352 F. Supp. 3d at 1234 (observing that a requirement to review the beneficiary name for a match would "undermine the express purpose of Article 4A by reinserting human review into a process which is intended to be quick and automated").

Since numerous state legislatures, including Florida, have made the value judgment by codifying Section 670.207 and its official comments that banks are not obligated to conduct a beneficiary name check, this Court should not create a contrary rule that undermines the policy of the Florida Legislature. *See also Wetherill v. Bank IV Kansas, N.A.*, 145 F.3d 1187, 1192 (10th Cir. 1998) (observing, "[w]hile this result may at first appear harsh, to hold otherwise where the bank was unaware it was benefiting from Leitner's wrongdoing, would necessarily chill commercial transactions.")

Attempts to morph arguments about what a bank "should" do into improper imputations of actual knowledge do not raise a genuine issue of material fact. For example, in the recent decision of *Madison Title Agency, LLC v. Bank of Am., N.A.,* 1:20-CV-03674-VMC, 2023 WL 3727281 (N.D. Ga. Apr. 20, 2023), the United States District Court for the Northern District of Georgia analyzed the identical provisions of Article 4A of the UCC at issue here, as codified by the state of Georgia. In *Madison Title Agency,* the plaintiff argued that the bank should have utilized a wire transfer system that checked for a beneficiary name match, and that actual knowledge could be imputed from the bank's failure to check the beneficiary information available. *Id.* at *3. The District Court held that this argument did not raise a genuine issue of material fact:

> Madison argues that such knowledge existed under the circumstances. Specifically, Madison attacks the Bank's wire transfer processing system as "badly outdated" and contends that "Bank employees also knew that technology readily available and easily implemented would have identified the obvious name mismatch between Madison's wiring instructions and its own customer in this case." But this contention, regardless of whether or not it is true, does not create a material dispute of fact about the Bank's knowledge. Instead, this argument sounds like "notice," which includes a fact where, "[f]rom all the facts and circumstances known to the person at the time in question, [the person] has reason to

> know that it exists." O.C.G.A. § 11-1-202(a). But Article 4A does not require that the Bank decline a wire transfer if it has "notice" of a mismatch, but specifically requires "knowledge." Nothing in Madison's argument about the merits of the Bank's system raises a reasonable inference that the Bank had actual knowledge of the mismatch in this case.

The Plaintiff's argument in this case is much the same. Specifically, Plaintiff argues that Truist had information in its system to ascertain a beneficiary name mismatch, and the Court should hold Truist liable under Section 670.207 by treating the available information as the "knowledge" of the organization. *See e.g.* DE 15 (Am. Compl.), ¶ 16. However, Plaintiff's argument is contrary to the text, official comment, and the great weight of judicial authority on the subject that rejects such efforts to transform notice into "knowledge" under the UCC. Since there is no genuine issue of material fact that no person at Truist had knowledge of the beneficiary mismatch at the time of the Wire Transfer, the Court should enter summary judgment in Truist's favor.

**2. The stopage for OFAC sanctions compliance also did not result in Truist having actual knowledge of the alleged beneficiary name mismatch.**

Plaintiff may incorrectly argue that Truist had actual knowledge of a name mismatch based on a payment stoppage during the Wire Transfer for an OFAC sanctions compliance review. However, there is no genuine issue of material fact that this stoppage for OFAC sanctions compliance review also did not examine the beneficiary name as part of processing the Wire Transfer. *See* Williams Aff., ¶¶ 11-18. Even a more manual process, like an OFAC sanctions review, is not sufficient to trigger liability under Section 670.207 when it does not result in someone at the bank acquiring knowledge of the beneficiary name mismatch. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A., 795* Fed. Appx. 741, 749 (11th Cir. 2019) ("Nor are we persuaded by Shapiro's argument that

Wells Fargo's OFAC screening creates factual issues that should preclude summary judgment."); Fla Stat. § 670.207, cmt 2 ("Section 4A-207 is not limited to cases in which processing is done by automated means. A bank that processes by semi-automated means or even manually may rely on number as stated in Section 4A-207."). Thus, the OFAC sanctions compliance review does not create a genuine issue of material fact that would merit denying summary judgment in this case.

Again, there is case law directly on point. In the case of *See Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226, 1233 (S.D. Fla. 2018), aff'd, 795 Fed. Appx. 741 (11th Cir. 2019), a wire transfer was processed automatically using the account number but triggered an OFAC review based on the field which included the term "ATTORN." 352 F. Supp. 3d at 1228. In the review process, the reviewer noted that the term "ATTORN" was flagged as being similar to a name on the sanctions list, ATTOUN, but that the term was used as an abbreviation for the word "attorney" and thus was not an OFAC violation. *See id.* As a result, the transaction was cleared for processing. *See id.*

The court rejected the plaintiff's argument that the person reviewing the transaction either did or should have noticed the mismatch between the beneficiary name and the accountholder's name, stating that "it is undisputed that the person did not look at whether the name and account number matched" and that there was "no evidence that Wells Fargo had actual knowledge of the mismatch." *Id.* at 1233. In upholding this ruling on appeal, the Eleventh Circuit stated:

> Nor are we persuaded by Shapiro's argument that Wells Fargo's OFAC screening creates factual issues that should preclude summary judgment. We have already concluded that Wells Fargo, as an

> organization, did not fail to act with the due diligence required by Article 4A of the UCC by allowing its automated MTS to process Shapiro's funds transfer without escalating information relating to a possible name mismatch to an individual person for review (including the OFAC screener or any other Wells Fargo personnel). It is also undisputed that the OFAC screener did not have actual knowledge of the potential name mismatch because he reviewed only the original payment order (and not the information generated by the MTS audit trail). Consequently, Wells Fargo still did not fail to act with due diligence in this case because the OFAC screener did not have any material information regarding the name mismatch to "communicate" to other individual persons at Wells Fargo in any event.

*Peter E. Shapiro, P.A.*, 795 Fed. Appx. at 749. This binding authority dictates summary judgment on Plaintiff's claims.

In this case, as in *Peter E. Shapiro, P.A.,* the Wire Transfer was flagged for OFAC review regarding information in fields other than the beneficiary name. *See* Williams Aff., ¶¶ 11-13. These fields did not contain any information pertaining to the identified beneficiary or the name of the Truist accountholder associated with the account number. *Id.* at ¶ 14. At no time during the OFAC review was anyone at Truist aware of a beneficiary name mismatch regarding the Wire Transfer. *Id.* at ¶ 18. Thus, just like the court held in *Peter E. Shapiro*, while "a person reviewed the transaction for sanctions compliance . . . it is undisputed that the person did not look at whether the name and account number matched." 352 F. Supp. 3d at 1233. As such, summary judgment for Truist is warranted on Plaintiff's claims under Section 670.207, and any argument from Plaintiff that the OFAC sanctions compliance review during the Wire Transfer created a genuine issue of material fact that precludes summary judgment is contrary to established Eleventh Circuit precedent.

### C. Plaintiff's Expert Report Does Not Create a Genuine Issue of Material Fact.

Plaintiff has disclosed an expert witness report by Don Coker ("Mr. Coker"). It is unclear if Plaintiff will rely on the opinion of Mr. Coker on summary judgment. If Plaintiff elects to offer the report of Mr. Coker in opposition to summary judgment, it should be noted that the report does not create a genuine issue of material fact. The entire report deals with issues that are immaterial to liability under Section 670.207. For example, Mr. Coker opines that Truist should not have opened the account at issue, violated its own policies and procedures, could have ascertained the existence of a beneficiary mismatch but did not actually check for one, and violated "nationwide industry standards." None of these issues are pleaded in the Amended Complaint as a basis for Truist's alleged liability. *See generally,* DE 15 (Am. Compl.). Furthermore, Mr. Coker's opinions on these matters are not material because none of the subjects on which he has opined are identified in Section 670.207 as a basis for liability.

Numerous statements in Mr. Coker's report constitute improper factual narration, such as his recitation that, "Truist had in hand information showing the mismatch between the account number and account owner, but failed to follow through to prevent this theft of funds." When Mr. Coker acts "simply as a narrator of the facts [he] does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). Thus, Mr. Coker's report fails to create a genuine issue of material fact because it is purely factual narration and is not traceable to a reliable methodology.

Furthermore, having the information "on hand" that would allow the identification of a beneficiary mismatch – if it was reviewed by someone during the Wire Transfer-

would not render Truist liable under Section 670.207 when the Wire Transfer is automated, even if the Wire Transfer is stopped for an OFAC check. *See Julio J. Valdes, M.D., P.A.,* 830 Fed. Appx. at 601. To the contrary, when Mr. Coker states that "this wire transfer was stopped, i.e. pulled out of the normal automatic flow of transactions, because of an OFAC hit; and this provided extra time that Truist would have to individually handle this transaction and could have used to examine and discovery the misconduct", he merely articulates his belief that Truist could have identified the beneficiary mismatch, which is not a material issue. More importantly, Mr. Coker concedes that Truist did not actually use the extra time occasioned by the OFAC check to "examine and discover[ ]" the beneficiary mismatch, which serves to exculpates Truist from liability in this case. As previously stated, under binding Eleventh Circuit precedent, there is no genuine issue of material fact that Truist cannot be held liable under Section 670.207 on such facts. *See Peter E. Shapiro, P.A.*, 795 Fed. Appx. at 749 (holding that even when transaction was stopped for OFAC compliance purposes, the fact that bank did not check for a beneficiary mismatch during the OFAC compliance check rendered bank <u>not liable</u> for the wire transfer).

Additionally, Mr. Coker's report does not describe his methodology for determining what constitutes "nationwide industry standards." A review of Mr. Coker's submissions does not reveal anything that would allow him to ascertain the prevailing practices of large banks during wire transfers. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1255–56 (11th Cir. 2010) (finding that expert witness's testimony was unreliable because the "conclusions were not logically supported by the facts of th[e] case"). Mr. Coker's opinion on what constitutes nationwide standards appears to ignore that banks like Wells Fargo

and Bank of America, credit incoming wire transfers using the same or similar systems and procedures to those employed by Truist. *See* Ex. 2 (Expert Opinion of Longstaff); *Peter E. Shapiro, P.A.*, 795 Fed. Appx. at 749 (as to Wells Fargo); *Madison Title Agency, LLC,* 2023 WL 3727281 at *3 (as to Bank of America). His report does not list the policies and procedures, deposition testimony, or accounts of the policies and procedures at any other bank. Any opinion on accepted standards in the banking industry must necessarily consider the practices of peer banks of a similar size during the relevant time period for the expert's methodology to be reliable. For example, in *Fabelo v. Wells Fargo Bank, N.A.,* 1:13-CV-22721-UU, 2014 WL 12596986, (S.D. Fla. Nov. 19, 2014), the District Court rejected the opinion of an expert witness regarding what constituted a standard practice within the banking industry, holding:

> In order for [the expert witness] to reliably opine on . . . a standard within the banking industry, she necessarily had to have evaluated how banks, similar to Defendant, processed checks between 2008 and 2012. [The expert witness] did not undertake the requisite analysis in drawing her conclusion that dollar limits are not a standard within the banking industry and therefore, the Court finds that her fourth opinion is unreliable.

*Id.* at *5. As in the *Fabelo* case, nothing in Mr. Coker's report demonstrates that his methodology has taken into consideration the practices of banks similar to Truist, or even that Mr. Coker would have reason to know of the wire transfer practices employed by banks similar to Truist during the time period relevant to this case.

Furthermore, Mr. Coker's opinion regarding the process Truist used to open the account is not only immaterial, but utterly contrary to the documents on which he purports to rely. Specifically, it appears Mr. Coker overlooked the corporate resolution for the accountholder produced at Truist Document Production, Bates 0000053-55. Regardless,

numerous cases have held that a bank has no legal duty to non-customers when opening bank accounts, thus this opinion does not address a material issue. *See e.g. Nat'l Union Fire Ins. Co. of Pittsburg, P.A. v. Raczowski*, 764 F. 3d 800, 805-06 (8th Cir. 2014) (bank owed no duty to non-customer whose employee opened account and fraudulently deposited noncustomer's checks into account); *Promissor, Inc. v. Branch Bank & Tr. Co.*, CIVA 108CV-1704-BBM, 2008 WL 5549451, at *1 (N.D. Ga. Oct. 31, 2008) (bank had no duty to noncustomer in the opening of the account fraudster used to deposit fraudulently endorsed checks). Likewise, nothing in Section 670.207 or any other provision of Florida's UCC would render Truist liable for the Wire Transfer based on the process used to open an account at Truist.

Mr. Coker's interpretation of Truist's policies and procedures as requiring the review of beneficiary name information prior to the crediting of an account for incoming wire transfers is utterly contrary to the text of those policies and procedures. *See* Truist Document Production, Bates 0000079, Ex. 2 (Opinion of Longstaff). His opinion that Truist could have, or should have, reviewed for a beneficiary mismatch is both immaterial and contrary to established Florida law. *See* Fla. Stat. § 670.207(2)(a); *Julio J. Valdes, M.D., P.A.,* 830 Fed. Appx. at 601. As such, these unfounded opinions do not create a genuine issue of material fact because, "there is simply too great an analytical gap between the data [the expert reviewed] and the opinion proffered." *Guinn*, 602 F.3d at 1255–56.

Mr. Coker's opinion is also replete with legal conclusions – which are not appropriate for expert witness testimony. This has been a basis for excluding Mr. Coker's testimony in other cases. *See, e.g.*, *Bouton v. Ocean Properties, Ltd.,* 16-CV-80502, 2017

WL 4792488, at *17 (S.D. Fla. Oct. 23, 2017) (excluding portion of Mr. Coker's testimony that included legal conclusions, "as those legal conclusions invade the province of the Court"). Any assertions by Mr. Coker regarding what Florida or federal law require or whether or not Truist complied with applicable law, therefore do not create a genuine issue of material fact. Since the Plaintiff cannot demonstrate a genuine issue of material fact using the opinion of Mr. Coker, summary judgment in favor of Truist is appropriate.

## CONCLUSION

The undisputed, material facts demonstrate that Plaintiff cannot prevail on its claim under Section 670.207 as a matter of law. Thus, for the aforementioned reasons set forth above, the Court should enter summary judgment for Truist.

**WHEREFORE, PREMISES CONSIDERED,** Truist Bank respectfully requests that the Court grant summary judgment in its favor and against Plaintiff, and provide any other and further relief that the Court deems necessary and proper.

DATED: August 8, 2023.

Respectfully submitted,

*/s/ Nicholas S. Agnello*

**Nicholas S. Agnello, Esq. (FL Bar No.90844)**
BURR & FORMAN LLP
350 East Las Olas Boulevard, Suite 1440
Ft. Lauderdale, FL 33301
Telephone: (954) 414-6200
Facsimile: (954) 414-6201
Email: flservice@burr.com
Email: nagnello@burr.com
Email: rzamora@burr.com

David Elliott, Esq. (FL Bar No. 94237)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 244-5631

Facsimile: (205) 244-5631
Email: delliott@burr.com
Email: cwingate@burr.com
Email: sfoshee@burr.com
*Counsels for Defendant Truist Bank*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 8, 2023, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve a copy of the aforesaid via Notice of Electronic Filing upon:

Aileen R. Mazanetz, Esq.
GAGEN, MCCOY, MCMAHON, KOSS, MARKOWITZ & FANUCCI
630 San Ramon Valle Blvd., Suite 100
Danville, CA 94526
Email: Amazanetz@gagenmccoy.com
Email: ilc@gagenmccoy.com
*Counsel for Plaintiff*

*/s/ Nicholas S. Agnello*
Nicholas S. Agnello, Esq. (FL Bar No. 90844)
BURR & FORMAN LLP