UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

POWIS PARKER, INC.,

        Plaintiff,

v.                                                      Case No.: 6:22-cv-1269-WWB-RMN

TRUIST BANK,

        Defendant.
                                    /

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 42), and the Response (Doc. 45) and Reply (Doc. 46) thereto. Also before the Court is Plaintiff's Objections to Evidence Filed by Defendant in Support of Motion for Summary Judgment (Doc. 45-2) and Defendant's Response (Doc. 47).

**I.    BACKGROUND**

In January or February of 2022, an e-mail account belonging to Plaintiff Powis Parker, Inc.'s ("**Powis Parker**") Finance Manager was hacked by a fraudster as part of a phishing scheme. (Doc. 15, ¶ 8). Using the compromised e-mail, the fraudster contacted several of Powis Parker's customer accounts, including the German corporation Formatic GmbH ("**Formatic**"), in a ploy to deceive it into issuing an unauthorized wire transfer. (*Id.*). The fraudster instructed Formatic to wire the sum of $245,000.00 to an account that the fraudster represented to Formatic as belonging to Powis Parker, which was maintained at Defendant Truist Bank's ("**Truist**") Orlando, Florida branch. (*Id.* ¶¶ 9–11). Formatic issued the wire transfer to Account Number 1000279820137 as instructed and identified the account as belonging to "Powis Parker Incorporated." (*Id.* ¶ 10). However,

1

the account was not owned by Powis Parker, but rather was in the name of Gen Script USA, Inc. and controlled by an individual named Lucy Herring.  (Doc. 45-1 at 18).

Truist received the wire transfer through the electronic Fedwire system and began processing it using the automated Money Transfer System ("**MTS**").  (Doc. 42-1, ¶ 5). MTS matched the account number provided in Formatic's instructions with a Truist account holding the same number (*Id.* ¶¶ 7–8).  Despite the mismatch between the beneficiary's name and the accountholder's name, MTS began electronically processing the transfer as it was programmed to do because the account number in Formatic's payment order matched a valid Truist account number.  (*Id.*).  During this process, the wire transfer was temporarily paused for an Office of Foreign Asset Control ("**OFAC**") sanctions compliance review, which involves a manual screening by an individual using the application Fircosoft.  (*Id.* ¶ 10; Doc. 45-1 at 3–4).

During the OFAC screening process, Fircosoft identified a "NAME MISMATCH" between the OBI field, which contains payment information from the originator bank to the beneficiary bank, and the 5100 field, which contains additional information about the originator bank .  (Doc. 42-1, ¶¶ 11–13).  Neither the OBI field nor the 5100 field contain the beneficiary name, and the notation of "NAME MISMATCH" does not refer to the beneficiary name mismatch.  (*Id.* ¶¶ 14, 16).  Ultimately, the OFAC review was completed, and the wire transfer was released into the Truist account.  (*Id.* ¶ 15).  The individual conducting the OFAC review did not flag the discrepancy between the beneficiary's name and the accountholder's name.  (*Id.* ¶ 16).

A few weeks later, Truist was alerted to the fraud and received a reversal request for the wire transfer.  (*Id.* ¶ 17).  But, at that point, the money had already been withdrawn,

and the account balance stood at $0.00.  (*Id.*; Doc. 42-2 at 2).  Truist did not credit the funds back to the originator.  (Doc. 15, ¶ 13).

As relevant to the pending Motion, Powis Parker sues Truist pursuant to Florida's codification of Article 4A of the Uniform Commercial Code ("**UCC**"), section 670.207, Florida Statutes (2022).[1]  (Doc. 15, ¶¶ 14–17).  Powis Parker claims that Truist was obligated to reject the wire transfer because the beneficiary name in the routing instructions did not align with the name of the accountholder.  (*Id.*).  Truist filed a motion for summary judgment on the claim, to which Powis Parker has responded in opposition.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law."  *Id.*  "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007).  Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

---

[1] "Under Florida law, the statute in effect when a cause of action accrues determines the applicable version of a statute."  *Reimer v. Highland Health Direct, LLC*, No. 23-CV-60237, 2023 WL 6973539, at *2 (S.D. Fla. Sept. 11, 2023).  Thus, the Court will apply the 2022 version of the Florida Statutes when assessing this claim.

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." *Allen*, 495 F.3d at 1314 (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003)).

### III.  DISCUSSION

The State of Florida has adopted Article 4A of the UCC. The primary provision at issue in this case is section 670.207(2), which contemplates a scenario where, as here, a bank accepts a wire transfer and the beneficiary name and account number identify different persons. The statute reads in relevant part:

> (a) Except as otherwise provided in subsection (3), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

Fla. Stat. § 670.207(2)(a)–(b). The general UCC definitions provide that "[a] person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it." Fla.

4

Stat. § 671.201(26)(c).[2] An organization is deemed to have knowledge of a fact relating to a "particular transaction from the time when it is brought to the attention of the individual conducting that transaction," or "from the time when it would have been brought to the individual's attention if the organization had exercised due diligence."  Fla. Stat. § 671.201(27); *see also Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 F. App'x 741, 746 (11th Cir. 2019).  Thus, the general rule is that banks are entitled to rely exclusively on the account number when processing wire transfers so long as they do not have actual knowledge of a beneficiary name discrepancy as set forth above.

Truist seeks summary judgment as to whether an individual person at Truist gained actual knowledge of the name discrepancy during the processing of the wire transfer and, if not, whether Truist's failure to discover and communicate the discrepancy could constitute a failure to exercise due diligence.  Powis Parker has responded in opposition to Truist's Motion and objects to the admissibility of evidence that Truist attached to its Motion.

    A.    **Evidentiary Objections**

To support the proposition that it lacked actual knowledge of the name mismatch, Truist relies on the Declaration of Tina M. Williams ("**Williams Declaration**," Doc. 42-1), its Branch Operations Partner.  Williams attests that no individual at Truist ever became aware of the beneficiary name mismatch, including the individual who conducted the OFAC review.  (*Id.* ¶¶ 14, 16, 18).  Powis Parker seeks to exclude paragraphs 14, 15, 16, and 18 of the Williams Declaration for lack of foundation and personal knowledge.

---

[2] The UCC definition of "[p]erson" includes individuals as well as corporations and associations, such as a bank.  Fla. Stat. § 671.201(30).

Specifically, Powis Parker argues that Williams "does not attest to having been personally involved" in the review or release of the wire transfer at issue and argues that she offers impermissible legal opinions. (Doc. 45-2 at 1). As explained below, Plaintiff's arguments are without merit.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." However, courts have explained that "[g]enerally, either a corporate officer or a custodian of records is presumed to possess personal knowledge of a fact contained in the corporation's records." *Fed. Trade Comm'n v. Home Assure, LLC*, No. 8:09-cv-547-T, 2010 WL 1708777, at *1 (M.D. Fla. Apr. 26, 2010) (citations omitted). As a result, "[c]orporations may offer testimony through their corporate representatives in the form of [an] affidavit." *D'Aprile v. Unum Life Ins. Co. of Am.*, No. 2:09-cv-270-FtM, 2010 WL 3810845, at *2 (M.D. Fla. Sept. 24, 2010).

As relevant, Williams attests that: (1) no individual at Truist reviewed the intended beneficiary name or recipient accountholder name during the OFAC review; (2) after review of the OBI field and 5100 field, Truist determined that no OFAC violation existed and released the funds[3]; (3) the notation of "NAME MISMATCH" did not refer to the mismatch between the intended beneficiary name and the accountholder name; and (4) no one at Truist became aware of the beneficiary name mismatch until March 10, 2022. (Doc. 42-1, ¶¶ 14–16, 18).

---

[3] Plaintiff argues this is an improper legal conclusion. However, this statement appears only to summarize Truist's findings, not to opine on whether an OFAC violation existed.

In its Objection, Plaintiff is essentially arguing that a review of the relevant corporate documents prior to submitting a declaration on behalf of the corporation is insufficient to meet the "personal knowledge" requirement of Rule 56.  Plaintiff finds no support for its argument in case law.  In fact, numerous courts have held that "[a]n affidavit submitted by a corporate representative in support of summary judgment is properly considered when the corporate representative expressly verifies that the matters stated therein are based on his own personal knowledge gained through review of business records."  *Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc.*, No. 17-20768-CIV, 2017 WL 4898292, at *2 (S.D. Fla. Oct. 27, 2017); *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-cv-538-J, 2010 WL 1930977, at *2 (M.D. Fla. May 13, 2010) (finding that the corporate representative's review of business records established the "personal knowledge" required under Rule 56(c)(4)).

The Court finds that Williams's statements are admissible because the Declaration asserts the basis of her personal knowledge, namely that she is the Branch Operations Partner for Truist and that she reviewed the records of the wire transfer at issue.  (Doc. 42-1, ¶ 3).  The audit trail of the wire transfer is attached to her Declaration, which Williams authenticates as a Truist business record.  (*Id.* ¶ 19).  These records provide the necessary foundational basis for her testimony.  Therefore, the Williams' Declaration is competent evidence for the Court to consider at summary judgment and Plaintiff's Objections will be overruled as set forth herein.

Plaintiff also seeks to exclude the expert report of G. Geoffrey Longstaff (Doc. 42-2), which Defendant attaches as an exhibit to its Motion.  Longstaff's report assesses Truist's internal policies and procedures, including the opening of the account in question,

and concludes that Truist acted in accordance with its policies and with reasonable banking practices. (*Id.* at 5–8). Plaintiff objects that Truist does not rely on any aspect of Longstaff's report to support its summary judgment motion and it is thus irrelevant to the issue of liability under section 670.207. However, Longstaff's report appears to be responsive to arguments made by Plaintiff concerning Truist's potential liability under section 670.207 for failing to exercise due diligence with regard to the opening of the account. Thus, the Longstaff report addresses the issues presently before the Court and will not be excluded.

### B.   Actual Knowledge

As set forth above, Truist relies on the Williams Declaration for the proposition that no individual at Truist gained actual knowledge of the beneficiary name mismatch until weeks after the wire transfer was completed, including the OFAC screener. In response, Plaintiff relies on the Coker Affidavit (Doc. 45-1) to demonstrate that a genuine dispute of fact exists as to Truist's actual knowledge of the mismatch. Even though the wire transfer was almost entirely automated, Coker testified that the individual performing the OFAC compliance review will "necessarily view the account beneficiary name and intended beneficiary information stated in the order." (*Id.* at 3). In arriving at this conclusion, Coker relies on his years of experience in the banking industry as well as his familiarity with standard banking industry practices.

Coker's testimony does not establish the existence of a genuine dispute of fact as to Truist's actual knowledge. As an initial matter, Coker has no personal knowledge of Truist's practices nor of the wire transfer at issue and sets forth no bases by which he could have acquired personal knowledge. Instead, Coker testifies to industry standards

8

and his prior experience with OFAC compliance reviews. However, Coker's testimony, taken as true, is at best evidence only of what Truist could have or should have known. It does not place Truist's actual knowledge at issue and thus does not demonstrate the existence of a genuine dispute of fact.

There is no evidence that any individual gained the actual knowledge necessary for liability under section 670.207. The OFAC screener reviewed fields unrelated to the beneficiary name and there is no evidence that the OFAC screener otherwise observed or noted the beneficiary name discrepancy. Plaintiff's argument that the OFAC screener could have or should have discovered the mismatch is unavailing. *See Peter E. Shapiro*, 795 F. App'x at 750 (finding that evidence of what the OFAC screener "potentially could or should have discovered" is insufficient to establish a claim under Article 4A of the UCC). In all other respects, the wire transfer was fully automated, and no other individual could have gained actual knowledge of the discrepancy. Because there is no reasonable dispute in this case that any individual person had actual knowledge of the name mismatch before Truist approved the wire transfer, summary judgment will be granted in favor of Truist.

    C.    **Due Diligence**

With respect to whether Truist exercised due diligence in processing the wire transfer—the only remaining basis under which Plaintiff could hold Truist liable in Count I—Plaintiff cannot prevail. To begin, Florida law is clear that banks are not obligated to verify whether the beneficiary name matches the account number before processing a transaction. Fla. Stat. § 670.207(2)(a). Moreover, section 671.201(27) operates to impute organizational knowledge for lack of due diligence only when the organization fails

to maintain "reasonable routines for communicating significant information to the person conducting the transaction." And the Eleventh Circuit has established that it is not unreasonable for banks to allow their automated wire transfer systems to rely on account number only. *See Julio J. Valdes, M.D., P.A. v. Customers Bank, Inc.*, 830 F. App'x 598, 601 (11th Cir. 2020). Because Truist utilized the automated MTS to complete the transaction, it has met its initial burden of proving that it implemented a reasonable routine and hence acted with due diligence.

Plaintiff argues that the individual conducting the OFAC compliance review failed to exercise due diligence because they should have noticed the mismatch between the beneficiary name and accountholder name. But the unrebutted fact in this case is that the OFAC screener did not have actual knowledge of the name mismatch. Thus, Truist "did not fail to act with due diligence in this case because the OFAC screener did not have any material information regarding the name mismatch to 'communicate' to other individual persons" at Truist. *Peter E. Shapiro, P.A.*, 795 F. App'x at 749.

Plaintiff also argues against the proposition that automated processing is a "reasonable routine," claiming that a bank's reliance on automation is contingent upon it having "properly fulfilled their initial gatekeeping role through adequate due diligence when opening accounts." (Doc. 45-1 at 4–5). Plaintiff posits that Truist cannot claim that the automated wire transfer was a reasonable routine because Truist opened the account in question using an unverified corporate resolution and otherwise failed to adhere to industry standards. Again, Plaintiff finds no support for its argument in the law. There is no authority that states or suggests that the use of an automatic wire transfer procedure such as MTS is not a reasonable routine if the bank improperly opened an account.

Indeed, the due diligence requirement of section 671.201(27) extends only to the "individual conducting the transaction," it does not contemplate the conduct of the bank at the time it opened the account. Accordingly, summary judgment will be granted in favor of Truist as a matter of law on Count I.

## IV.     CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED**. Defendant is entitled to summary judgment as to Count I of the Second Amended Complaint (Doc. 15) as a matter of law.
2. Plaintiff's Objections to Evidence Filed by Defendant in Support of Motion for Summary Judgment (Doc. 45-2) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 5, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record